**SHAMIS & GENTILE, P.A.**
Katherine S. Phillips (SBN: 353048)
kphillips@shamisgentile.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330990)
scott@edelsberglaw.com
Gabriel Mandler**
gabriel@edelsberglaw.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL WINEMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIMAL NUTRITION, LLC, D/B/A PRIMAL KITCHEN,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Wineman ("Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, brings this class action against Defendant Primal Nutrition, LLC, d/b/a Primal Kitchen ("Defendant") based upon personal knowledge as to himself, and upon information, investigation, and belief of his counsel.

## INTRODUCTION

1. This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of its product, which is marketed as made with avocado oil as its sole oil ingredient.

2. Specifically, Defendant has sold and marketed the Product (fully defined in Paragraph 12, below) with the phrase "MADE WITH AVOCADO OIL" (the "Avocado Oil Representation"), representing to consumers that its Product is made with avocado oil as its sole oil ingredient.

3. Despite the Avocado Oil Representation, and unbeknownst to consumers, the Product is not made with avocado oil as its sole oil ingredient. Instead, the Product is adulterated with cheaper seed oils.

4. Plaintiff and other consumers purchased the Product and paid a premium price based upon their reliance on the Avocado Oil Representation. Had Plaintiff and other consumers been aware that the Avocado Oil Representation was false, they would not have purchased the Product or would have paid significantly

less for it. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least one member of the proposed Class(es) is a citizen of a state different from Defendant's state of citizenship; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

6. This Court has general personal jurisdiction over Defendant because it conducts and transacts substantial business in California, and intentionally and purposefully placed the Product into the stream of commerce within California.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

**PLAINTIFF**

8. Plaintiff is a citizen of the United States and the State of California, and he currently resides in Los Angeles, California. On May 12, 2026, Plaintiff purchased the Primal Kitchen Italian Dressing & Marinade Made with Avocado Oil from a Whole Foods Market in Burbank, California. On August 18, 2026, he purchased the same Product at the same location. Based on the Product's Avocado

Oil Representation, Plaintiff reasonably believed that the Product was made with avocado oil as its sole oil ingredient. Had he known that the Product was not made with avocado oil as its sole oil ingredient, he would not have purchased it, or would have paid significantly less for it.

9. Despite Defendant's misrepresentation, Plaintiff would purchase the Product, as advertised, if it were actually made with avocado oil as its sole oil ingredient. Although Plaintiff regularly shops at various retail stores that carry the Product, absent an injunction of Defendant's deceptive advertising, he will be unable to rely with confidence on Defendant's advertising of the Product in the future. Furthermore, while Plaintiff currently believes that the Product is not made with avocado oil as its sole oil ingredient, he lacks personal knowledge as to Defendant's specific business practices, and thus, he will not be able to determine whether the Product truly will accurately reflect its advertising. This leaves doubt in his mind as to the possibility that at some point in the future the Product could be made in accordance with the Avocado Oil Representation. This uncertainty, coupled with his desire to purchase the Product, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representation. In addition, other Class members will continue to purchase the Product, reasonably but incorrectly, believing that the Product is made with avocado oil as its sole oil ingredient.

## DEFENDANT

10. Defendant Primal Nutrition, LLC is a Delaware limited liability company with its principal place of business in Oxnard, California. Defendant operates the Primal Kitchen brand, which sells dressings, mayonnaise, and condiments, including the Product challenged in this Complaint. Defendant sells the Product throughout California, including in this District.

## FACTUAL ALLEGATIONS

11. Defendant is responsible for the formulation, manufacturing, marketing, labeling, advertising, distribution and sale of Primal Kitchen branded products, including dressings, mayonnaise, and condiments, which are sold in retail stores across the United States as well as directly on Defendant's website.

12. The Product at issue in this case is Primal Kitchen Italian Dressing & Marinade Made with Avocado Oil (the "Product").

13. Defendant has labeled the Product with the phrase "MADE WITH AVOCADO OIL," representing to consumers that avocado oil is the Product's sole oil ingredient. The Product is depicted below:




14. However, despite the Avocado Oil Representation, the Product is not made with avocado oil as its sole oil ingredient. Instead, the Product is adulterated with cheaper seed oils.

15. Independent scientific testing confirms that the Product is not made with avocado oil as its sole oil ingredient. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology and the University of California Agriculture and Natural Resources published a peer-reviewed study

(the "Study") of the authenticity of avocado oil used as an ingredient in commercially processed foods.[1] A true and correct copy of the Study is attached hereto as Exhibit A ("Ex. A").

16. The Study set out to determine whether processed foods, including mayonnaise and salad dressings, that claim to contain avocado oil as the sole oil ingredient in fact contain the oil declared on the label. *Id.* Only products that declared a single edible oil (e.g., avocado oil) in the ingredients, and that did not list any additional edible oils, were included. Across all categories, the Study analyzed 74 samples, including 12 avocado oil–labeled salad dressing samples. *Id.* The products were purchased in 2025 and 2026 from retail stores in California and from online sources, and each lot was analyzed in duplicate. *Id.* The brand and product name of every sample tested is identified in the Study's brand information exhibit, a true and correct copy of which is attached hereto as Exhibit B ("Ex. B").[2]

17. The Product at issue in this action was among the avocado oil–labeled salad dressing products tested. Specifically, the Study tested and reported results for two separate lot numbers of the Product (Samples 43 and 44). *See* Ex. B.

---

[1] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[2] Brand Information Relating to the Study, *supra* note 1, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

18. To recover and test the oil used in each of the Study's salad dressing products, the researchers portioned approximately 20 grams of dressing into 50 mL tubes, froze the samples at -20°C for 24 hours, thawed them for two hours at room temperature, and centrifuged them at 15,000 x g for 10 minutes, separating an oil layer for analysis pursuant to the Lagunes-Galvez et al. (2002) method. *See* Ex. A.

19. For the fatty acid profile, the extracted oil was converted to fatty acid methyl esters (a standard chemical preparation that allows the individual fatty acids in any edible oil to be separated and measured), using a published official method for that preparation (COI/T.20/Doc. No. 33/Rev.1), and analyzed by gas chromatography with flame ionization detection ("GC-FID"). *Id.* The individual fatty acids were identified against a 37-component certified reference standard covering the full range of fatty acids found in edible oils. *Id.* The measurement method is common to all edible oils; the avocado-specific benchmarks against which the results were judged are set forth in Paragraph 20 below.

20. The fatty acid and sterol profile measured for each salad dressing sample was then compared against the compositional ranges for authentic avocado oil established by the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999). *Id.* Those ranges are designed to encompass the natural variability of authentic avocado oil attributable to cultivar, geographic origin, maturity, and growing conditions. *Id.* The researchers then applied further tolerances that operated in the tested products' favor: a deviation limited to a single fatty acid or sterol marker

that did not exceed the Codex limit by more than ten percent was disregarded and the sample was treated as consistent with authentic avocado oil, and a sample that was fully consistent as to one profile and only borderline as to the other was likewise treated as consistent. *Id.* Only samples exhibiting multiple deviations, or patterns inconsistent with authentic avocado oil reference profiles, were classified as inconsistent. *Id.*

21. Both lots of the Product were classified as compositionally inconsistent with authentic avocado oil. *See* Ex. B.

22. The compositional deviations measured in the avocado oil–labeled salad dressings were not random. Ex. A. They followed a single, consistent pattern: reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), cis-vaccenic acid (C18:1 n-7), beta-sitosterol, and clerosterol, together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol. *Id.* That combination is not characteristic of authentic avocado oil. *Id.* It is instead characteristic of cheaper vegetable seed oils, and is the signature of substitution or dilution of avocado oil with such oils. All 12 avocado oil–labeled salad dressing samples tested in the Study were classified as inconsistent, and all avocado oil salad dressings fell outside the Codex ranges for palmitic acid (C16:0), palmitoleic acid (C16:1), and stearic acid (C18:0). *Id.* Principal component analysis of the fatty acid and sterol data confirmed the point: many of the avocado oil–labeled

samples clustered not with authentic avocado oil, but with the Study's comparator products formulated with canola, corn, soybean, and/or sunflower oil. *Id.*

23. The cis-vaccenic acid results are particularly probative. Cis-vaccenic acid (C18:1 n-7) is an established marker for detecting seed oil adulteration of avocado oil because it is characteristically elevated in authentic avocado oil and present at markedly lower levels in the common seed oils used to adulterate it. *Id.* In the Study, the avocado oil–labeled samples classified as consistent with authentic avocado oil contained a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids, clustering in a 4–6% range. *Id.* The samples classified as inconsistent contained a mean of only 1.7% ± 0.5%, clustering in a 1–2% range that aligns with typical vegetable seed oil profiles. *Id.* The difference between the two groups was statistically significant ($p < 0.001$). *Id.*

24. These deviations cannot be attributed to emulsification or short-term storage, the processing steps the researchers tested. *Id.* The researchers specifically tested that explanation by preparing model mayonnaise, an emulsified avocado oil product, with pure avocado oil to evaluate potential compositional changes during emulsification and storage. *Id.* The model showed fatty acid changes of no more than 0.3% and sterol shifts of no more than 0.5%, while cis-vaccenic acid remained unchanged. *Id.* Thus, the minor changes caused by emulsification are insufficient to explain the deviations. *Id.* Such emulsified products involve no high-temperature exposure. *Id.* The data are consistent with substitution or dilution of the oil in the

Product with cheaper seed oils—precisely as Plaintiff alleges, and precisely contrary to the Avocado Oil Representation.

25. The Avocado Oil Representation is material to reasonable consumers because avocado oil is widely regarded as healthier, and therefore more premium, than other cooking oils, and consumers pay more for it as a result.

26. That reputation is well founded. Avocado oil delivers meaningful health benefits, including cardiovascular benefits and anti-inflammatory effects.[3] Avocado oil also performs better than many other cooking oils because of its high smoke point and mild taste.[4]

27. Seed oils, by contrast, are viewed by many consumers as ingredients to be avoided. The eight most prevalent seed oils, known colloquially as the "hateful eight," are believed by many to be toxic, a reputation driven in part by their high linoleic acid content, which is thought to promote inflammation linked to conditions such as arthritis, heart disease, metabolic syndrome, stroke, and type 2 diabetes.[5]

28. For these reasons, many consumers seek to eliminate seed oils from their diets and instead pay a premium for alternatives such as avocado oil. Defendant

---

[3] Marcos Flores et al., *Avocado Oil: Characteristics, Properties, and Applications*, 24 Molecules 2172 (June 2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6600360/.

[4] *Yes, Avocado Oil Is Good for You*, Cleveland Clinic (Dec. 19, 2024), https://health.clevelandclinic.org/is-avocado-oil-good-for-you.

[5] Julia Zumpano, RD, LD, *Seed Oils: Are They Actually Toxic*?, Cleveland Clinic (Mar. 3, 2025), https://health.clevelandclinic.org/seed-oils-are-they-actually-toxic.

has capitalized on that consumer preference by labeling and advertising the Product as made with avocado oil as its sole oil ingredient when it is not.

29. The reasonable belief that the Product is made with avocado oil as its sole oil ingredient was a significant factor in Plaintiff's and other Class members' decisions to purchase the Product. Thus, Defendant promises the Product made with avocado oil as its sole oil ingredient, but provides consumers with the Product adulterated with cheaper seed oils.

30. As the entity responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Product, Defendant knew or should have known that the Product's Avocado Oil Representation is false and misleading.

31. Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Product, would rely on Defendant's false and misleading representation. Nonetheless, Defendant deceptively advertises the Product in order to deceive consumers and gain an unfair advantage in the market.

32. Consumers are willing to pay more for the Product based on the belief that the Product is made with avocado oil as its sole oil ingredient. Plaintiff and other consumers would have paid significantly less for the Product, or would not have purchased it at all, had they known the truth about it. Thus, through the use of the misleading representation, Defendant commands a price that Plaintiff and the Classes would not have paid had they been fully informed.

33. Therefore, Plaintiff and other consumers purchasing the Product have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## PLAINTIFF LACKS AN ADEQUATE REMEDY AT LAW

34. Plaintiff pleads the equitable claims and remedies asserted in this Complaint, including restitution and injunctive relief, in the alternative to the legal claims and remedies asserted herein. Plaintiff and the Classes are entitled to do so because they lack an adequate remedy at law for the equitable relief sought. As to the restitution sought, the legal remedies available to Plaintiff and the Classes are inadequate because they are not equally prompt, certain, or efficient and require proof of elements and entitlement to relief different from those required for restitution. Accordingly, if Plaintiff or any Class member is unable to recover damages under the legal claims asserted herein, restitution may nevertheless be necessary to restore money wrongfully obtained by Defendant. As to injunctive relief, damages are retrospective and cannot redress the prospective injury alleged in Paragraph 9 above. Only an injunction can remedy Plaintiff's continuing inability to rely on Defendant's labeling of the Product.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**

All residents of California who purchased the Product within the applicable statute of limitations period ("California Class").

**California Consumer Subclass**

All residents of California who purchased the Product for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Classes").

36. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

38. Plaintiff is a member of all the Classes.

39. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is

impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendant's records through its online marketplace, or through sales data obtained via third parties. At a minimum, there likely are tens of thousands of Class members.

40. **Commonality:** There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendant's representation about the Product and reasonably believe the Product is made with avocado oil as its sole oil ingredient;

c. whether Defendant knew or should have known its representation was false or misleading;

d. whether Defendant was unjustly enriched by retaining monies from the sale of the Product;

e. whether certification of each Class is appropriate under Rule 23;

f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g. the amount and nature of the relief to be awarded to Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

41. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Product. Plaintiff and the members of the Classes relied on the representation made by Defendant about the Product prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendant's Product and would not have purchased it (or would have paid substantially less for it) had they known that Defendant's representation was untrue.

42. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

43. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

44. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint. Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for individual Class members to obtain redress. Furthermore, many of the Class members may be unaware that claims exist against Defendant.

45. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Product in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(*On behalf of the California Consumer Subclass*)**

46. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

47. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

48. The Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Product by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

49. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing the Product with the Avocado Oil Representation, Defendant has represented and continues to represent that the Product has characteristics (i.e., that it is made with avocado oil as its sole oil ingredient) that it does not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

50. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Product with the Avocado Oil Representation, Defendant has represented and continues to represent that the Product is of a particular standard (i.e., that it is made with avocado oil as its sole oil ingredient) when it is not of that standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

51. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Product with the Avocado Oil Representation, Defendant has advertised the Product with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

52. Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By representing the Product with the Avocado Oil Representation and then supplying the Product that is adulterated with cheaper seed oils, Defendant has supplied the Product in a manner inconsistent with its previous representation. Therefore, Defendant has violated section 1770(a)(16) of the CLRA.

53. At all relevant times, Defendant has known or reasonably should have known that the advertising of the Product's Avocado Oil Representation is false and misleading, and that Plaintiff and other members of the California Consumer

Subclass would reasonably and justifiably rely on the Avocado Oil Representation when purchasing the Product. Nonetheless, Defendant deceptively advertises the Product as such in order to deceive consumers into believing that the Product is made with avocado oil as its sole oil ingredient, when it is not.

54. Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representation when purchasing the Product. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

55. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Product, or would not have purchased it at all, had they known that the Product is not made with avocado oil as its sole oil ingredient.

56. Under Cal. Civ. Code § 1782, on or around October 21, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendant, outlining that Defendant has violated the CLRA for the reasons described herein. If within 30 days of receipt, Defendant does not agree to rectify the problems identified herein, Plaintiff will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of himself and the members of the California Consumer Subclass.

57. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit C to this Complaint.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of California's False Advertising Law**
**California Business & Professions Code §§ 17500, *et seq.***
**(*On behalf of the California Class*)**

58. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

60. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

61. Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its deceptive advertising, that the Product is made with avocado oil as its sole oil ingredient when it is not. Because Defendant has disseminated misleading

information regarding the Product, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

62. As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to him and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*On behalf of the California Class*)**

63. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

65. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

66. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Product was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class.

67. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Product's advertising. Deceiving consumers into believing they will receive the Product made with avocado oil as its sole oil ingredient, but failing to provide the Product as advertised, is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

68. Under the UCL, a business act or practice is “fraudulent” if it actually deceives or is likely to deceive members of the consuming public. Defendant’s conduct here was and continues to be fraudulent because, due to the Product’s Avocado Oil Representation, the Product has the effect of deceiving consumers into believing they will receive a product made with avocado oil as its sole oil ingredient when the Product is not manufactured as such. Because Defendant misled Plaintiff and members of the California Class, Defendant’s conduct was “fraudulent.” As a result of Defendant’s fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

69. Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to him, and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*On behalf of the California Class*)**

70. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

72. California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

73. Plaintiff and members of the California Class formed a contract with Defendant at the time they purchased the Product. As part of those contracts, Defendant described the Product with the phrase "MADE WITH AVOCADO OIL," representing that the Product is made with avocado oil as its sole oil ingredient.

74. The Product's Avocado Oil Representation: (a) is an affirmation of fact or promise made by Defendant to consumers that the Product is made with avocado oil as its sole oil ingredient; (b) became part of the basis of the bargain to purchase

the Product when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Product would conform to the affirmation of fact or promise. In the alternative, the representation about the Product is a description of goods which was made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the product description.

75. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Product did in fact conform to those warranties.

76. Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Product in accordance with the Avocado Oil Representation.

77. Plaintiff and members of the California Class paid a premium price for the Product but did not obtain the full value of the Product as represented. If Plaintiff and members of the California Class had known of the true nature of the Product, they would not have been willing to pay the premium price associated with it. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

78. Plaintiff and the other California Class members notified Defendant of the breaches of its express warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendant regarding its

breaches on or around October 21, 2026. Defendant was also on notice of its breaches from other sources, including the Study cited *supra*.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314**
**(*On behalf of the California Class*)**

79. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code § 2314.

81. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

82. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

83. Defendant is a merchant with respect to the sale of the Product. Therefore, a warranty of merchantability is implied in every contract for sale of the Product to California consumers.

84. By advertising the Product with the Avocado Oil Representation, Defendant made an implied promise in the Product's labeling that the Product is made with avocado oil as its sole oil ingredient. The Product, however, has not conformed to this promise because the Product is adulterated with cheaper seed oils. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Product is not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Product.

85. If Plaintiff and members of the California Class had known that the Product's Avocado Oil Representation was false and misleading, they would not have been willing to pay the premium price associated with it. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

86. Plaintiff and the other California Class members notified Defendant of the breaches of its implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendant regarding its breaches on or around October 21, 2026. Defendant was also on notice of its breaches from other sources, including the Study cited *supra*.

**<u>SIXTH CLAIM FOR RELIEF</u>**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*On behalf of the California Class*)**

87. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for unjust enrichment.

89. As alleged herein, Defendant has intentionally and recklessly made a misleading representation to Plaintiff and members of the California Class, to induce them to purchase the Product. Plaintiff and members of the California Class have reasonably relied on the misleading representation and have not received all of the benefits (i.e., the Product made with avocado oil as its sole oil ingredient) promised by Defendant through the Product's Avocado Oil Representation. Plaintiff and members of the proposed California Class have therefore been induced by Defendant's misleading and deceptive representation about the Product, and paid more money to Defendant for the Product than they otherwise would and/or should have paid.

90. Plaintiff and members of the proposed California Class have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the proposed California Class.

91. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed California Class—i.e., Plaintiff

and members of the proposed California Class did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

92. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed California Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(*On behalf of the California Class*)**

93. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant for common law fraud.

95. Defendant has willfully, falsely, and knowingly misrepresented the Product through the Product's Avocado Oil Representation, as it knew that the Product was not made with avocado oil as its sole oil ingredient.

96. Defendant has therefore made a knowing, fraudulent misrepresentation as to the Product.

97. Defendant's misrepresentation was material (i.e., it affected the purchasing decisions of Plaintiff and members of the California Class, given its

importance), and is central to the Product's functionality because the Product is advertised as made with avocado oil as its sole oil ingredient, but does not conform to that representation.

98. Defendant knew or recklessly disregarded the fact that the Product's Avocado Oil Representation was false and deceptive.

99. Defendant intended that Plaintiff and members of the California Class rely on the Product's advertising; if they had known the truth that the Product's Avocado Oil Representation was false and misleading, they would have paid less for the Product or would not have purchased it at all.

100. Plaintiff and members of the California Class have reasonably and justifiably relied on Defendant's misrepresentation when purchasing the Product, and if Plaintiff and members of the California Class had known the truth about the Product, they would not have paid monies for the Product or would have paid less monies for the Product.

101. For these reasons, Plaintiff and members of the California Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, violate the statutes and laws described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F. An award of nominal, punitive, and statutory damages;

G. An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: October 21, 2026

**EDELSBERG LAW, P.A.**

By: */s/ Scott A. Edelsberg*

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330990)
Gabriel Mandler**
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Katherine S. Phillips (SBN: 353048)
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299
kphillips@shamisgentile.com

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*